631 P.2d 885 (1981)
RIVERTON CITIZENS FOR CONSTITUTIONAL GOVERNMENT, a Utah corporation; Gaylord Johnson; Christine Savage; Joe Mascarro; and Lowell White, as Mayor of Riverton City and individually, Plaintiffs and Appellants,
v.
Don BECKSTEAD; Steve Brooks; Curtis Collard; Ove Christensen, individually and as Council Members of the City of Riverton; the City of Riverton; and Salt Lake County, Defendants and Respondents.
No. 17296.
Supreme Court of Utah.
May 29, 1981.
Kenneth M. Hisatake, Salt Lake City, for plaintiffs and appellants.
Stewart M. Hanson, Jr., David R. Olsen, Ted L. Cannon, Donald Sawaya, Salt Lake City, for defendants and respondents.
*886 OAKS, Justice:
In this appeal, we are called upon to construe the statutory requirements for a referendum on a city ordinance.
On March 4, 1980, the Riverton City Council, defendants in this action, passed an ordinance establishing the city manager form of government. On about March 27, 1980, opponents of that measure, plaintiffs in this action, submitted referendum petitions to the office of the Riverton City Recorder, seeking to refer that ordinance to the voters. After intervening events summarized below, the defendant city officials refused to place the referendum petition on the ballot, plaintiffs brought this suit to compel that action (and for other relief not at issue on this appeal), and the district court granted partial summary judgment in favor of defendants on this issue. The court ruled that "[t]he Petitions were not checked and filed according to the requirements of law and the Riverton City Recorder is not required to submit the Ordinance to the voters at the next ensuing municipal election." Plaintiffs took this appeal. We affirm. Statutory citations are to Utah Code Annotated, 1953, as amended.
Section 20-11-24 requires that referendum petitions against any city ordinance be filed with the city recorder within 30 days of their passage. Section 20-11-16 requires that the county clerk check all the signatures on a referendum petition against the official registration lists of the county and certify whether each name is that of a duly registered voter.[1] In Allan v. Rasmussen, City Recorder, 101 Utah 33, 117 P.2d 284 (1941), this Court held that the referendum petition could not be filed until the county clerk had completed that check and certification. An amendment to § 20-11-16, enacted in 1977, requires that the referendum petition be delivered to the county clerk not less than 150 days before, and that the county clerk check all the names not less than 127 days before, any "general election."[2]
After completing the prescribed check and certification, the county clerk delivers the referendum petition to the city recorder, §§ 20-11-16, 20-11-23, who determines whether the petition contains the number of certified signatures required by law, and, if so, provides for its printing on the ballot. §§ 20-11-13, 20-11-16, 20-11-23. Once the petition has been filed with the city recorder, the challenged ordinance is suspended and will not go into effect unless and until it is approved by the voters at the next election. § 20-11-21. Also, see §§ 20-11-5 and 20-11-23.
In this case, neither the county clerk nor anyone in his office checked the signatures on this referendum petition or made any certification of the signers' status as registered voters. Instead, on about March 31, 1980, the Riverton City Recorder personally checked the names on the petitions with the records of the county clerk, and on May 10, 1980, certified the referendum petition as sufficient. The single issue on this appeal is whether that action met the requirements of the law.
Plaintiffs argue that the referendum petition does not have to be checked and certified by the county clerk before it is *887 filed because the 1977 amendment (which imposed the 150-day and 127-day requirements) to § 20-11-16 effectively repealed § 20-11-24 and overruled Allan v. Rasmussen, supra, insofar as they require the county clerk's action to be taken before the petition is filed. Otherwise, plaintiffs urge, a county clerk could intentionally or unintentionally frustrate the right to a referendum vote by failing to act in time for the referendum petition to be filed within the 30-day limit. The logical sequence, plaintiffs argue, is for the unchecked petition to be filed with the city recorder within 30 days and for the signatures to be checked and certified by the county clerk later but before 127 days in advance of the general election.
In contrast, we find no express repeal of the rule that requires a referendum petition to be checked, certified, and filed within 30 days. The 1977 amendment of § 20-11-16 made no reference to § 20-11-24 or to the decision in Allan v. Rasmussen, supra. The evident purpose of that amendment's addition of the 127-day and 150-day requirements was to assure adequate time to include a referendum petition on the ballot at a general election. There is no implied repeal, either, because there is no manifest inconsistency or conflict between the newly enacted time limits and the earlier filing and checking requirements. State v. Sorensen, Utah, 617 P.2d 333 (1980); Salt Lake City v. Towne House Athletic Club, 18 Utah 2d 417, 424 P.2d 442 (1967).
We also find no merit in plaintiffs' alternative argument that the Riverton City Recorder's checking of the signatures in this case was substantial compliance with the statutory requirement. The law requiring checking by the county clerk serves two important functions: (1) As compiler and custodian, the county clerk is most familiar with how to use the voter registration lists; and (2) as an independent custodian of these records, the county clerk can give an impartial verification of the authenticity of the signatures on the petition. A check by the city recorder  even in the office of the county clerk  provides no substantial compliance with those important functions. As this Court declared in Allan v. Rasmussen, 101 Utah at 41-42, 117 P.2d at 291, we are not at liberty "to vary the procedure clearly indicated by the legislature in such a way as to defeat some of its salutory features." The substantive requirement of a knowledgeable and independent verification of signatures is obviously of an entirely different character than the formalities having to do with printing, placement of check marks, and correctness of heading on which this Court found substantial compliance in Palmer v. Broadbent, 123 Utah 580, 260 P.2d 581 (1953), relied on by plaintiffs.
Arguing that the referendum legislation should "receive a liberal construction to effectuate its purpose,"[3] plaintiffs would have us construe § 20-11-24 or overrule Allan v. Rasmussen to modify the requirement of checking in advance of filing in order to counter the risk that the county clerk would frustrate the referendum right by delaying his action beyond the 30-day deadline. But even if the law could be altered in that manner, such a construction would incur what we deem to be an even greater risk.
If a referendum petition could be validly filed in advance of the required check and certification of voters' signatures, the opponents of a legislative measure could suspend the action of duly elected lawmakers without first producing verified signatures demonstrating the support of the prescribed number of qualified voters in the jurisdiction. The law-making power of a governmental unit should not be subject to question or supersedure without strict compliance with that vital step.
This construction of the statutory law admittedly subjects those who challenge laws or ordinances to the risk that unjustified delays in checking and certifying signatures may preclude the filing of their referendum petitions within the statutory 30-day deadline. That is a gap in the legislative fabric. However, a contrary conclusion *888 would not eliminate the gap but only shift its impact. Under plaintiffs' proposed construction, we would prevent a referendum from being aborted due to official neglect but do so at the risk of permitting legislation to be aborted due to unofficial manipulation. Until instructed otherwise by the Legislature, we prefer to construe this gap so as to eliminate the risk of improper manipulation of the referendum petition by private persons and to assume what we deem the lesser risk of improper conduct by duly elected officials.[4]
The summary judgment for defendant is affirmed. No costs awarded.
MAUGHAN, C.J., and HALL, STEWART and HOWE, JJ., concur.
NOTES
[1] After this controversy arose, the Utah Legislature amended U.C.A., 1953, § 20-11-23 to give city recorders or town clerks the duty of checking and certifying the signatures on referendum petitions on municipal legislation. Utah H.B.No. 130 (1981).
[2] Both parties to this litigation apparently assume that the 1977 amendment's reference to "general election" includes a municipal election. This assumption is supported by § 20-11-23, which declares that, "as nearly as practicable," the provisions and procedures pertaining to state legislation shall apply to municipal legislation. However, that issue is clouded by § 20-11-25's explicit provision of a 90-day minimum for the submission of an initiative proposal at a "municipal election." There is no comparable provision for a referendum proposal at a municipal election. By adopting the assumption of the parties and using the statutory term "general election" to include a municipal election for purposes of this opinion, we intimate no opinion on the application of the 90-day, 127-day, or 150-day statutory limits to municipal elections or on any of the other inconsistencies and disjunctions in the statutes governing direct legislation that are not necessary to the decision of this appeal.
[3] Cope v. Toronto, 8 Utah 2d 255, 259, 332 P.2d 977 (1958).
[4] We express no opinion on whether the mandamus remedy currently available under U.R.C.P., Rule 65B(b)(3) or any other remedy would be available to compel action by a clerk who declined to perform his or her statutory function in time for the proponents of a petition to meet the deadline under § 20-11-24.